IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,
Ex rel.
SHAWN PELLETIER,

STATE OF FLORIDA,
Ex rel.
SHAWN PELLETIER,
    Plaintiff - Relator,
v.

FILED
8/4/14
CLERK, U. S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

Case No. 3:11-CV-587-J-32-MCR
FILED IN CAMERA AND UNDER SEAL
DO NOT PLACE IN PRESS BOX
DO NOT ENTER INTO PACER

LIBERTY AMBULANCE SERVICE, INC.,
SOUTHERN BAPTIST HOSPITAL OF FLORIDA, INC.,
MEMORIAL MEDICAL CARE, GROUP, INC.,
ORANGE PARK MEDICAL CENTER, INC.,
And
SHANDS JACKSONVILLE MEDICAL CENTER, INC.,
    Defendants.

---

## AMENDED QUI TAM COMPLAINT AND DEMAND FOR JURY TRIAL

Relator-Pelletier, Shawn Pelletier, on behalf of himself, the United States of America, and the State of Florida, and sues Defendants, LIBERTY AMBULANCE SERVICE, INC., SOUTHERN BAPTIST HOSPITAL OF FLORIDA, INC., MEMORIAL MEDICAL CARE, GROUP, INC., ORANGE PARK MEDICAL CENTER, INC., and SHANDS JACKSONVILLE MEDICAL CENTER, INC., as follows:

### JURISDICTION AND VENUE

1. This is an action to recover damages and civil penalties on behalf of the United States of America, and the State of Florida, arising from false or fraudulent records, statements, or claims, or any combination thereof, made, used or caused to be made, used or presented by the

1

Defendants, their agents, employees, or any combination thereof, under the federal False Claims Act, 32 U.S.C. 3729-33 (the "False Claims Act") and the Florida False Claims Act, Section 68.081-68.09 Florida Statutes, (the "Florida False Claims Act"). This Court has jurisdiction pursuant to 28 U.S.C. 1331, 1345 and 31 U.S.C. 3732(a) in that Courts I, II, and III, arise under the laws of the United States. Supplemental Jurisdiction over Counts IV, V, and VI, arise under 28 U.S.C. 1367 in that these counts are so related to the federal claims that it forms part of the same case or controversy and 31 U.S.C. 3732(b) because such violations arise from the same transactions or occurrences that are the subject of the federal False Claims Act claims alleged in Counts I, II, and III.

2. Venue is proper in the Middle District of Florida pursuant to 31 U.S.C. 3732(a) and 28 U.S.C. 1391(b) (1) and (2). Defendants conduct substantial business in the State of Florida, in this judicial district, and can be found in the Middle District of Florida.

3. Defendants committed acts prohibited by 31 U.S.C. 3729 within the Middle District of Florida. Specifically, Defendants have submitted and caused to be submitted false or fraudulent claims for payment for ambulance services in this judicial district and established and maintained false records for payment of such unlawful claims by the United States and the State of Florida.

4. Relator SHAWN PELLETIER [hereinafter referred to as "Relator", "Relator Pelletier" or "Pelletier"] is the "original source" of the information, as defined in 31 U.S.C. 3730(e) (4), on which the allegations contained here are based. Relator's complaint is not based on any other prior public disclosures of the allegations or transactions discussed herein in a criminal, civil, or administrative hearing, lawsuit or investigation or in a Government Accounting Office or Auditor General's report, hearing, audit, or investigation, or from the news media.

5. As required by the federal False Claim Act and the Florida False Claims Act, Relator

Pelletier has provided to the Attorney General of the United States and to the United States Attorney for the Middle District of Florida a statement of all material evidence and information related to the complaint. This disclosure statement is supported by information known to the Relator-Pelletier and evidence in his possession at the time of filing of the complaint.

6. Relator Pelletier has complied with all other conditions precedent to bringing this action.

## BACKGROUND

7. Under the federal False Claims Act, 31 U.S.C. 3729(a), et seq., any person having direct, personal knowledge about the violation of the Act, may bring an action on behalf of the United States.

8. Under the federal False Claims Act, 31U.S.C. 3729(a), any person who knowingly submits, or causes to be submitted to the government or recipients of federal funds, a false or fraudulent claim for payment or approval, is liable for a civil penalty of between $5,500 and $11,000 for each such claim, and three times the amount of damages sustained by the Government. The Federal False Claims Act empowers persons having information regarding a false or fraudulent claim against the government to bring an action on behalf of the Government and to share in the recovery.

9. The Florida False Claims Act is modeled after its federal counterpart. Section 68.081 et seq., Florida Statutes, provides that any person who (a) knowingly presents or causes to be presented a false or fraudulent claim for payment or approval; (b) knowingly makes, uses or causes to be made or used a false record or statement material to a false or fraudulent claim; or (c) conspired to commit a violation of this subsection is liable to the state for a civil penalty of

not less than $5,500 and not more than $11,000 and for treble the amount of damages the state sustains because of the act of that person. Section 68.082(2), Florida Statutes.

## PARTIES

10. Plaintiffs, the United States and the State of Florida [hereinafter "the Government"] fund the provision of medical care, including the ambulance services, through the Medicare and Medicaid Programs.

11. Relator-Pelletier, Shawn Pelletier, has been an Emergency Medical Technician (EMT) since 1998. From 2006 -2008, Mr. Pelletier was employed by Liberty Ambulance. In the performance of his duties as an EMT on Liberty Ambulance's vehicles, Mr. Pelletier witnessed, on a daily basis, Liberty Ambulance's regular practice of falsifying documents and records with the purpose of billing Medicare or Medicaid for ambulance services to and from Defendant Southern Baptist Hospital; Memorial Hospital; Orange Park Medical Center; and Shands Jacksonville Medical Center; that were never provided or were medically unnecessary. Additionally, Mr. Pelletier has direct personal knowledge that Liberty Ambulance submitted its false claims for payment to the United States. Mr. Pelletier's experience with Defendants has convinced him that Defendants' fraud constitutes a widespread and systematic practice by Defendants at the expense of American taxpayers and elderly or indigent patients.

12. Defendant, Liberty Ambulance Service, Inc., is a Jacksonville, Florida-based provider of emergency and non-emergency medical transport services. Liberty Ambulance Services, Inc., is a Florida Corporation established on or about February 20, 1981.

13. Defendant, Orange Park Medical Center, Inc., [hereinafter referred to as "Orange Park"] is a Florida corporation that operates a hospital in the City of Orange Park, Clay County, Florida.

4

14. Defendant, Memorial Health Care, Inc., [hereinafter referred to as "Memorial"] is a Florida corporation d/b/a Memorial Hospital Jacksonville that operates a hospital in the City of Jacksonville, Duval County, Florida.

15. Defendant, Southern Baptist Hospital of Florida, Inc., [hereinafter referred to as "Baptist"] is a Florida corporation d/b/a Baptist Medical Center that operates a hospital in the City of Jacksonville, Duval County, Florida.

16. Defendant, Shands Jacksonville Medical Center, Inc., [hereinafter referred to as "Shands"] is a Florida corporation that operates a hospital in Jacksonville, Duval County, Florida.

## MEDICARE AND MEDICAID COVERAGE

17. Medicare is a government health insurance program for individuals age 65 or older, certain disabled people, and people with End-Stage Renal Disease. See, 42 U.S.C. 1395, et seq. In general, individuals who are age 65 or older and receiving Social Security are eligible for Medicare Parts A and B. Medicare Part A covers most medically-necessary inpatient hospital care, skilled nursing facility care, home healthcare, and hospice care. Medicare Part B covers most medically necessary outpatient hospital care, doctors' services, preventive care, durable medical equipment, laboratory tests, x-rays, mental health care, and certain home health and ambulance services. Medicare Parts A and B are administered directly by the federal government.

18. Under Medicare Part B: - Supplementary Medical insurance for the Aged and Disabled – Medicare covers medically necessary ambulance services. Medicare Part B covers ambulance transfer from any point of origin to the nearest hospital or skilled nursing facility that is capable of furnishing the required level and type of care. 42 C.F.R. Section 410.40(e). It will

5

not pay for a transfer to a medical facility based simply on beneficiary preference. Medicare Part B will also cover trips from a hospital to a beneficiary's home or nursing facility plus trips for dialysis for certain patients provided, always, that the patient meets medical necessity requirements. Ambulance services are deemed medically necessary "if they are furnished to a beneficiary whose medical condition is such that other means of transportation are contraindicated." 42 CFR 410.40. Although "bed-confinement" is itself neither sufficient nor required as evidence of medical necessity, it is one "factor to be considered." Id. A Medicare beneficiary is bed-confined if three requirements are met:

(i) the beneficiary is unable to get up from bed without assistance;

(ii) the beneficiary is unable to ambulate;

(iii) Or the beneficiary is unable to sit in a chair or wheelchair." Id.

19. Medicare imposes an additional requirement for non-emergency, scheduled, repetitive, ambulance services, such as dialysis transport. The ambulance service provider must determine that medical necessity requirements are met and obtain a written order from the patient's physician certifying the medical necessity of ambulance transport. See 42 CFR 410.40(d). Such order is valid for 60 days.

20. Effective April 1, 2002, the Center for Medicare and Medicaid Services ["CMS"] replaced the previous "reasonable charge" billing procedure and established a fee schedule for ambulance services. See 41 CFR 414.601, et seq. The fee schedule defines several different levels of ambulance service. There are substantially different reimbursement rates under Medicare and Medicaid for patients that are ambulatory, patients who are wheelchair bound and for patients who are confined to a bed, needing either basic life support (BLS) ["BLS transportation by ground ambulance vehicle and medically necessary supplies and services, plus

6

the provision of BLS ambulance services] advanced life support (ALS) [ALS Level 1 and Level 2 includes the provision of medically necessary supplies and services and the provision of an ALS assessment and ALS intervention. An ALS intervention is a procedure that must be performed by an emergency medical technician – intermediate or EMT-Paramedic]; or specialized care transport (SCT) [SCT includes the provision of medically necessary supplies and services beyond the scope of an EMT-Paramedic]. SCT is also considered critical care. 42 CFR 414.604

21. Medicaid was created on July 30, 1965, through Title XIX of the Social Security Act. Medicaid is a cooperative federal-state program through which the federal government provides financial assistance to states including Florida so that it may furnish medical care to needy individuals. 42 U.S.C.S. § 1396 et seq.

22. The law requires state Medicaid plans to execute written agreements between the Medicaid agency and each provider furnishing services under the plan ("provider agreements"). 42 C.F.R. § 431.107(b). Florida Hospitals and ambulance companies are "providers" who are required to sign provider agreements with Florida Medicaid program. The agreement requires the providers to agree that it will comply with all Medicaid requirements, as well as other federal and state laws. The Medicaid claim form itself contains a certification by the provider that it has complied with all aspects of the Medicaid program.

23. In order to qualify patients for ambulance transport subject to payment by Medicare or Medicaid, hospitals must provide to the ambulance services providing the transportation for each patient, a certificate of medical necessity signed by a nurse or physician.

24. The certificate of medical necessity is utilized as supporting documentation for the claim submitted by health care providers to Medicare or Florida Medicaid for payment of its

claim for services rendered to eligible patients. The certificates of medical necessity are required to obtain reimbursement by Medicare or Medicaid.

25. Defendants, Memorial, Baptist, Orange Park and Shands, are health care providers that participate in federally-funded health care programs, including Medicare and Florida Medicaid.

26. Defendants, Memorial, Baptist, Orange Park and Shands, provided medical treatment to patients under the Medicare or Florida Medicaid program and had a duty to truthfully document and bill for those medical services in a timely, efficient, and accurate manner.

27. Providers Defendants Baptist, Memorial, Orange Park and Shands entered into contracts with Defendant Liberty Ambulance and submitted reimbursement claims for ambulance services. Through these contracts. Defendant Liberty Ambulance submitted or caused to be submitted claims for reimbursement to the Medicare and the Florida Medicaid program.

28. Liberty Ambulance provided ambulance services to hospital patients under the Medicare or Florida Medicaid program. All defendants had a duty to truthfully document and bill for those services in a timely, efficient, and accurate manner.

29. The Medicare or Florida Medicaid claims submitted by Defendants from 2005 to date was accompanied by an express or implied certification that the transaction was in full compliance of federal or state statutes, regulations, or program rules. The Defendant Hospitals – all of whom are experienced health care providers with detailed knowledge of the laws applicable to government programs – knew that submitting false and/or complete claims would not be reimbursed by Medicare or Florida Medicaid. Knowingly submitting or causing the submission of claims for prescription drugs which are not reimbursable creates liability under the

federal False Claims Act, 31 U.S.C. 3729 et seq., and the Florida False Claims Act, Section 68.081, et. Seq., Florida Statutes.

30. From 2005 to date, Defendants, Liberty Ambulance, Memorial, Baptist, Orange Park and Shands, routinely omitted and/or misrepresented the medical condition of the patient being transported by Liberty Ambulance on the certificate of medical necessity. The Defendants routinely submitted claims to Medicare and Florida Medicaid for the transport of individuals whose physical condition and healthcare record did not justify reimbursement at the rate claimed by Defendant Liberty Ambulance for reimbursement by Medicaid and Florida Medicaid. Voluminous claims were submitted by Defendants in violation of the Medicare and Florida Medicaid requirements.

31. The misrepresentation of the medical condition of the patient on the certificate of medical necessity by Defendants, Memorial, Baptist, Orange Park, and Shands, allowed the respective hospital Defendant to transport the patient without incurring the cost of transportation and, in addition, allowed Defendant Liberty Ambulance to bill Medicare or Medicaid for the cost of transportation at a higher reimbursement rate than lawful or warranted under the circumstances.

32. In order to facilitate the discharge of patients, the Defendant Hospitals, Memorial, Baptist, Orange Park and Shands Jacksonville, routinely provided certificates of medical necessary which misrepresented the medical condition of the patient's discharge. Such practice in concert with Defendant Liberty Ambulance allowed the Defendant Hospitals to discharge and transport patients without cost to the hospitals and provided profit to Defendant Liberty Ambulance at a substantial cost to taxpayers and indigent patients.

33. Liberty Ambulance s primary business in North Florida is the repeat, scheduled, non-emergency transport of patients. Through a systematic scheme of falsifying Medicare-required documents and records, Liberty Ambulance fraudulently billed the United States and the State of Florida for ambulance services that were not performed or, in the alternative, performed under circumstances contrary to the condition of the patient, in order to obtain the maximum reimbursement by Medicare or Florida Medicaid. Liberty Ambulance transports these patients by BLS or ALS ambulance. The ambulance transport of such patients is reimbursable by Medicare only if BLS or ALS medical services are actually provided to the patient, for whom such services are medically necessary. In many instances, Liberty Ambulance patients did not require such BLS or ALS services and did not receive them. Instead, in order to create the appearance that it has performed a BLS or ALS level of service and complied with Medicare requirements - and to get its false claims paid - Liberty Ambulance systematically engaged in various activities and techniques to improperly increase and fraudulently inflate the amount of reimbursement that Defendant, Liberty Ambulance, received from Medicare and Medicaid. This resulted in Defendant, Liberty Ambulance, filing or causing to be filed, false claims to the government under its "patient care report" to reflect clinical characteristics that were not present and medical treatment that was never performed.

34. Liberty Ambulance implemented a routine scheme of fraudulent alteration of patient care reports [hereinafter referred to as "PCR"]. The PCR is a standard form on which Defendant, Liberty Ambulance, purported to record patient information, clinical characteristics, and services performed. During the period of Mr. Pelletier's employment as an EMT at Liberty Ambulance , Paramedics and EMT were required to submit all PCRs electronically to billing supervisors. Mr.

Pelletier has personal knowledge that patient information was routinely fabricated and altered to falsely indicate services and treatment that were never provided.

35. Defendant, Liberty Ambulance, has routinely instructed its ambulance drivers to omit any positive findings which would prevent reimbursement for claims to Medicare and Florida Medicaid at the highest level for the transportation of patients and individuals.

36. Defendant, Liberty Ambulance, actively altered the run reports submitted by its Paramedics and EMTs to claim reimbursement from Medicare or Medicaid that would otherwise not be allowed or would be allowed, if reported correctly, at lower levels of reimbursement.

37. In addition to falsifying records supporting a claim for reimbursement from Medicare and Florida Medicaid, Liberty Ambulance has destroyed records evidencing such false claims.

38. Relator-Pelletier is aware of patients, to whom Liberty Ambulance provided Transportation by ambulance that was billed to Medicare or Florida Medicaid, or both, when the patient did not require or need transportation by ambulance. Century Ambulance had wheelchair vans and stretcher unit that could transport ambulatory patients, however, such wheelchair vans and stretcher units were reimbursed at a lower rate than an ambulance under Medicare or Florida Medicaid. Medicare and Florida Medicaid statutes do not require that a wheelchair van or stretcher unit be staff with an EMT or a paramedic. For example, Relator-Pelletier was instructed to provide transportation by ambulance to a dialysis patient who was equipped with a wheelchair. The patient could stand and pivoted on his own, required minimum assistance required for transportation and was transported by ambulance to dialysis three times a week. At the patient's request, in route to or from dialysis, the ambulance driver routinely stopped at a convenient store to buy Lottery tickets or a restaurant to purchase a meal for the patient. Liberty

11

Ambulance authorized the patient's transportation to a dialysis across the county and not the closest center as required by Medicare and Florida Medicaid in order to increase the amount of the claim.

39. Relator-Pelletier is aware of other instances where false or fraudulent claims for reimbursement by Medicare or Florida Medicaid are made by Defendant Liberty Ambulance. For example, discharged patients are provided oxygen in route by Liberty Ambulance employees when not prescribed by the Defendant Hospital. On other occasions, ambulance drivers are directed to conduct an EKG test on themselves in order to submit it for reimbursement for an untested patient at a higher Medicare or Florida Medicaid rate than submitted without an EKG test. Liberty Ambulance Paramedics and EMTs are also instructed to fill in plausible information on PCRs to make it appear as though the medical equipment was used, when, in fact, such equipment was either not on board or inoperative. Defendant Liberty Ambulance thus fabricated Medicare-required patient documents listing services that were not performed.

40. By and through their fraudulent schemes described herein, Defendants regularly and knowingly submitted false records and claims for payments to the United States through Medicare or Medicaid.

41. The value of false claims submitted by Defendants Liberty Ambulance in the period covered by this pleading is estimated to be in excess of ten million dollars ($10,000,000.00).

## COUNT I MEDICARE

FEDERAL FALSE CLAIMS ACT
31 U.S.C. §3729(a) (1) [1986] and
31 U.S.C. §3729(a) (1) (A) [2009]

Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

42. Defendants knowingly presented or caused to be presented a false or fraudulent claim for payment or approval in violation of 31 U.S.C. §3729(a) (1) [1986] and 31 U.S.C. §3729(a) (1) (A) [2009].

43. By virtue of the false or fraudulent claims that Defendants presented, the United States has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim.

## COUNT II MEDICAID

### FEDERAL FALSE CLAIMS ACT
### 31 U.S.C. §§ 3729(a) (2) [1986] and
### 31 U.S.C. §3729(a) (1) (B) [2009]

Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

44. Defendants knowingly made, used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by the Government, in violation of 31 U.S.C. § 3729(a) (2) [1986] and 31 U.S.C. 3729(a) (1) (B) [2009]. Defendants' false records or statements caused the State of Florida to submit false and inflated claims to the United States for the federal portion of Medicaid.

45. By virtue of the false or fraudulent records or statements that Defendants made or caused to be made, presented, the United States has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim.

## COUNT III

### FEDERAL FALSE CLAIMS ACT
### 31 U.S.C. §3729(a) (3) [1986] and
### 31 U.S.C. §3729(a) (1) (C) [2009]

Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

46. Through these acts, and further as set forth in Counts I and II, Defendants conspired to defraud the United States by submitting and receiving payment for false or fraudulent claims allowed or paid in violation of 31 U.S.C. Section 3729(a)(3) [1986] and 31 U.S.C. 3729(a)(1)(c) [2009]. By virtue of this conspiracy, the United States has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim.

## COUNT IV – FLORIDA MEDICAID

### FLORIDA FALSE CLAIMS ACT
### Section 68.082(2) (a), et seq., Florida Statutes.

Relator-Pelletier repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

47. Through these acts, the Defendants have knowingly presented or caused to be presented false or fraudulent claims for payment to the State in violation of Section 68.082(2) (a) of the Act. Such claims caused actual damages to the State.

48. Through these acts, the Defendants violated the Florida False Claims Act, Section 68.082(2) (a) of the Act. Such claims caused actual damages to the State.

49. The State of Florida, unaware of the falsity of the bills for services, and in reliance on the accuracy thereof provided by Defendants, paid money to Defendants that would not have been paid had it been known of the false or fraudulent claims.

50. By reason of Defendants' false and fraudulent claims, Defendants' wrongly procured a large number of Medicaid payments resulting in substantial monetary damages to the State of Florida.

## COUNT V – FLORIDA MEDICAID

### FLORIDA FALSE CLAIMS ACT
Section 68.082(2) (b), et seq., Florida Statutes.

Relator-Pelletier repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

51. Through these acts, the Defendants have knowingly made, used, or caused to be made or used a false record or statement to get a false or fraudulent claim paid or approved by an State of Florida in violation of Section 68.082(2)(a) Such claims caused actual damages to the State.

52. Through these acts, the Defendants violated the Florida False Claims Act, Section 68.082(2) (b) of the Act. Such claims caused actual damages to the State.

53. The State of Florida, unaware of the falsity of the bills for services, and in reliance on the accuracy thereof provided by Defendants, paid money to Defendants that would not have been paid had it been known of the false or fraudulent claims.

54. By reason of Defendants' false and fraudulent claims, Defendants wrongly procured a large number of Medicaid payments resulting in substantial monetary damages to the State of Florida.

## COUNT VI – FLORIDA MEDICAID

### FLORIDA FALSE CLAIMS ACT
Section 68.082(2) (c), et seq., Florida Statutes.

Relator-Pelletier repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

55. Through these acts, the Defendants have conspired to defraud the State of Florida by getting false or fraudulent claims allowed or paid, in violation of Section 68.082(2) (c). Such claims caused actual damages to the State.

56. Through these acts, the Defendants violated the Florida False Claims Act, Section 68.082(2) (c) of the Act. Such claims caused actual damages to the State.

57. The State of Florida, unaware of the falsity of the bills for services, and in reliance on the accuracy thereof provided by Defendants, paid money to Defendants that would not have been paid had it been known of the false or fraudulent claims.

58. By reason of Defendants' activities in support and furtherance of the conspiracy, Defendants wrongly procured a large number of Medicaid payments resulting in substantial monetary damages to the State of Florida.

## REQUESTS FOR RELIEF

WHEREFORE, Plaintiff – Relator Pelletier, on behalf of the United States and the Plaintiff States, demands that judgment be entered in their favor and against Defendants for the maximum amount of damages and such other relief as the Court may deem appropriate on each Count. This includes, with respect to the federal False Claims Act, Counts I, II, and III, three times the amount of damages to the Federal Government plus civil penalties of no more than Eleven Thousand Dollars ($11,000.00) and no less than Five Thousand Five Hundred Dollars ($5,500.00) for each false claim, and any other recoveries or relief provided for under the Federal False Claims Act.

This Request also includes, with respect to the Florida False Claim Act, Counts IV, V, and VI, the maximum damages permitted by those statutes and the maximum fine or penalty permitted by those statutes, and any other recoveries or relief provided for under Florida law.

Further, Plaintiff Relator Pelletier requests that he receive the maximum amount permitted by law of the proceeds of this action or settlement of this action collected by the United States and the State of Florida, plus reasonable expenses necessarily incurred, and reasonable attorneys' fees and costs. Relator requests that his award be based upon the total value recovered, both tangible and intangible, including any amounts received from individuals or entities not parties to this action.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38, Fla.R.Civ.P. Relator-Pelletier demands trial by jury.

Date: August 4, 2014

Respectfully Submitted,

LAW OFFICE OF GEORGE K. BREW

GEORGE K. BREW, ESQUIRE
Florida Bar No. 854379
6817 South point Parkway #1804
Jacksonville, Florida 32216
Telephone 904/354-4741
Telecopier 904/354-8001
georgebrew@brewlawfirm.com
**COLLINS & STORY, PA**
**CLYDE M. COLLINS, JR., ESQUIRE**
Florida Bar No. 342688
233 East Bay Street #920
Jacksonville, Florida 32202
Telephone 904/355-0805
Telecopier 904/634-1507

## CERTIFICATE OF SERVICE

On this ____ day of August 2014, Relator-Pelletier hereby certifies that in compliance with Rule 4 of the Federal Rules of Civil Procedure, service of the *Qui Tam* Complaint has been executed as follows:

By Hand Delivery to:
**United States Attorney – M.D. Florida**
Bryan Simpson United States Courthouse
300 North Hogan Street #700
Jacksonville, Florida 32202
And By United States Mail, Certified Delivery, Return Receipt Requested to:
**Attorney General of the United States**
Department of Justice
950 Pennsylvania Avenue, North West
Washington, District of Columbia 20530-0001
And to
Hon. Pam Bondi, Attorney General of Florida
Office of the Attorney General
The Capitol PL – 01
Tallahassee, Florida 32399-1050

_____
GEORGE BREW, ESQUIRE

Complaint pelletier v LIBERTY 8 1 2014