**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA,
ex rel. Shawn Pelletier,

        Plaintiff,

vs.          Case No. 3:11-cv-587-J-32MCR

LIBERTY AMBULANCE SERVICE, INC.,

        Defendant.

## **ORDER**

Shawn Pelletier, an emergency medical technician formerly employed by defendant Liberty Ambulance Service, Inc., filed this qui tam case against Liberty and a number of medical facilities with whom Liberty does business alleging violations of the False Claims Act related to their Medicare and Medicaid billing practices (an amended complaint brought additional state law claims). After some period of investigation, the United States intervened and settled with the other defendants. On June 12, 2015, the United States filed a complaint in intervention against Liberty bringing two counts under the False Claims Act, one count under the Anti-Kickback Statute, and two counts under state law for unjust enrichment and payment by mistake. Doc. 39. Liberty has now filed a motion to dismiss (Doc. 40) and the government responded in opposition (Doc. 41), seeking leave to amend if the Court grants the motion. For the various reasons that follow, the government must file an amended complaint.

**I.      Standard of Review**

When ruling on a motion to dismiss, the Court reviews the complaint assuming the facts as pled are true, and the Court construes those facts in the light most favorable to the plaintiff. See Glover v. Liggett Group, Inc., 459 F.3d 1304, 1308 (11th Cir. 2006). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[N]aked assertions devoid of further factual enhancement" are not enough. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotations omitted). Additionally, the claims brought pursuant to the False Claims Act must be pled with particularity under Federal Rule of Civil Procedure 9(b). United States ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1310 (11th Cir. 2002).

**II.     Discussion**

Liberty argues that the government's complaint in intervention is due to be dismissed because: 1) certain of the counts improperly incorporate the prior causes of action; 2) the sworn statements attached to the complaint reference exhibits which are not attached; 3) the allegations of violations of the False Claims Act and Anti-Kickback Statute fail to demonstrate more than a mere possibility of misconduct; 4) the False Claims Act counts are not pled with sufficient particularity; 5) the unjust enrichment count fails to state a claim.[1]

---

[1]The government has mischaracterized and/or failed to address a number of Liberty's arguments. For example, the opening sentence of the government's brief contends that despite being engaged in conversations with the government for years about its civil liability exposure, Liberty claims it is "left to guess" about the government's theories of liability. See Doc. 41 at 1. However, while Liberty questions whether the government can support its theories, it never claims to be guessing as to what they are. In fact, the motion says Liberty is left to guess about one matter only– the content of the exhibits the government failed to attach to the statements supporting the complaint (see Doc. 40 at 2), a matter about which

### A. Improper incorporation

Counts Two, Three, and Four improperly incorporate every preceding paragraph including those of the prior causes of action and must be repled. See Paylor v. Hartford Fire Ins. Co., 748 F.3d 1117, 1125-26 (11th Cir. 2014) (reiterating Eleventh Circuit's condemnation of shotgun pleadings).

### B. Failure to attach exhibits

The sworn statements attached to the complaint reference exhibits that are not attached to those statements. Based on the descriptions, they may well already be of record, but the government should attach the exhibits to the statements so it is clear (except that there is no need to attach the driver's licenses which would have to be heavily redacted before filing anyway).

### C. Plausibility or mere possibility

Liberty argues that the government's allegations regarding the False Claims Act and Anti-Kickback Statute fail to contain sufficient factual content to "plausibly give rise to an

---

the Court must guess too. The government also says Liberty is "misguided" when it "takes the Government to task" for only using patient initials and not identifying their conditions or when they were allegedly transported by Liberty (the government then goes on to explain why patient confidentiality required these measures). See Doc. 41 at 4. In fact, that's not Liberty's argument at all. Liberty stated that "despite identifying the patient, their condition, and when they were allegedly transported by Liberty, the Complaint wholly fails to identify who at Liberty reportedly filled out the incorrect/false run reports." See Doc. 40 at 11 (emphasis supplied). And indeed, this is true– the government's complaint does not identify who at Liberty filled out these reports and, as discussed further below, fails to allege other necessary elements to state its False Claims Act claims with particularity. Moreover, the government failed to address Liberty's argument regarding the shotgun pleading, the failure to attach exhibits, and its contention that the Anti-Kickback claim is premised on compliance with a non-binding advisory opinion.

entitlement to relief," instead suggesting a "mere possibility" of misconduct, which is insufficient to state a claim under Rule 8(a)(2) (citing Iqbal and others).

As to the False Claims Act claims, Liberty contends that while the government has included allegations and supporting materials which might support misconduct, there are statements within those materials which paint a different picture. While some of the statements are inconsistent, the overall tenor of the allegations, sworn statements, and other exhibits supports the government's theory that Liberty knowingly and intentionally defrauded the government by submitting false claims for payment in violation of 31 U.S.C. §§ 3729(a)(1), 3729(a)(1)(A), and 3729(a)(1)(B). The Court finds the False Claims Act claims meet the Rule 8 pleading standards in that the allegations "plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

Liberty makes the same argument as to the alleged violation of the Anti-Kickback Statute.[2] And indeed, some of the materials are inconsistent with the government's theory

---

[2]Though Count Five is pled as a violation of the Anti-Kickback Statute, this Act is a criminal statute. However, violations of it can form the basis of a claim under the False Claims Act because eligibility to submit a Medicare claim is contingent on compliance with all federal health care laws, including the Anti-Kickback Statute; thus, submission of a claim by one who has violated that statute is a false claim within the meaning of the False Claims Act. McNutt ex rel. United States v. Haleyville Med. Supp., Inc., 423 F.3d 1256, 1259-60 (11th Cir. 2005). See also United States ex rel. Schmidt v. Zimmer, Inc., No. Civ.A.00-1044, 2005 WL 1806502, at *2, n.5 (E.D. Penn. July 29, 2005) (explaining that "the Anti-Kickback Act is a criminal statute for which no private right of action exists"). If this is its claim, the government should clarify when repleading that Liberty is alleged to have violated the False Claims Act by violating the Anti-Kickback Statute, and if so, the allegations must conform with Rule 9(b). See United States ex rel. Mastej v. Health Mgmt. Assoc., Inc., 591 F. App'x 693, 705-06 (11th Cir. 2014) (violations of the False Claims Act premised on the Anti-Kickback Statute must be pled with particularity); United States ex rel. Keeler v. Eisai, Inc., 568 F. App'x 783, 798-800 (11th Cir. 2014) (mem.) (per curiam) (same).

that the relationship between Liberty and Memorial Hospital violated the Anti-Kickback Statute.[3]  However, construing the facts in the light most favorable to the plaintiff, the Court finds here too that the allegations are sufficient to meet the Rule 8 standards. See id.  In making this determination, the Court finds the allegations state a claim of a violation of the plain language of the Anti-Kickback Statute and the Court therefore does not address the effect, if any, of the Health and Human Services Advisory Opinion 99-13 relied on by the government in its complaint. Doc. 39 at ¶¶ 32-34 and Ex. A.

### D.   Particularity under Rule 9(b)

Liberty further argues that the False Claims Act counts are not pled with sufficient particularity.  Here the Court agrees.  To satisfy Rule 9(b), a False Claims Act plaintiff may not describe an improper scheme in detail and assume that a claim for payment must have been or likely was submitted based on the scheme. United States ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1311 (11th Cir. 2002).  Rather, "some indicia of reliability must be given in the complaint to support the allegation of an actual false claim for payment being made to the Government."  Id.  As explained by the Fourth Circuit (and as cited by Clausen, 290 F.3d at 1311), the False Claims Act "attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment.'" Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 785 (4th Cir. 1999) (emphasis

---

[3] A defendant violates the Anti-Kickback Statute when it:  (1) knowingly and wilfully, (2) offers or pays money or in kind services, directly or indirectly, overtly or covertly, to health care providers, (3) to induce the providers to refer individuals to the defendant for the furnishing of medical services, (4) paid for by a federal health care program. See 42 U.S.C. § 1320a-7b(b)(2)(A); see also United States v. Vernon, 723 F.3d 1234, 1252 (11th Cir. 2013) (reciting elements).

supplied by Clausen) (additional citation omitted). The submission of the claim itself is "the sine qua non of a False Claims Act violation." Clausen, 290 F.3d at 1311.  And, while a plaintiff is not required to submit an actual claim to allege a violation, "[a]t a minimum, a plaintiff-relator [or government intervenor] must explain the basis for [the] assertion that fraudulent claims were actually submitted."  Mastej, 591 F. App'x at 704.[4]

Here, the government's complaint and supporting materials go into great detail regarding a scheme whose purpose may well have been to secure payment from the government based on false claims.  But the allegations stop short of describing what happened once the run reports were submitted to the Liberty office for processing.  The sworn statements filed in support of the complaint are from current and former Liberty emergency medical technicians and a former Liberty dispatcher, all of whom were familiar with the need to submit run reports which would be payable by Medicare (even if it allegedly meant the reports must be falsified), but none of them were involved with the actual submission of claims to the government or the receipt of payment from the government. The person who professed the most familiarity with the billing process (Amanda Strickland) explained her understanding of the types of charges that could be reimbursed and those that could not, and her understanding of the documentation necessary to support reimbursable

---

[4]The parties did not distinguish their arguments between the "presentment" claim (Count One) and the "make-or-use" claim (Count Two).  To prove the "presentment" claim, the government must show that Liberty "presented" an actual false claim to the government. The "make-or-use" claim requires proof that the government paid a false claim. See Hopper v. Solvay Pharm., Inc., 588 F.3d 1318, 1327-29 (11th Cir. 2009) (discussing presentment and make-or-use claims under pre-2009 version of False Claims Act); Keeler, 568 F. App'x at 800 (discussing 2009 amendment to "make-or-use" claim, noting claim must allege defendant falsified information provided to the government and profited from it).

claims. See Doc. 1, Ex. E at 9-15. She did not, however, claim that she had ever submitted a false claim to the government or that she observed others doing so. Said Strickland: "I know I'd give [the billing manager] the [original and corrected run reports], and what she did with it after that is beyond me." Id. at 19.

Though the government attached numerous exhibits to its complaint, it did not attach copies of any actual claims (and, unlike a typical qui tam relator, the government presumably has access to all of these records).[5]  And, despite the government's statement to the contrary (see Doc. 41 at 5), the complaint does not provide "billing amounts [and] paid amounts" for four different claims. In fact, despite an alleged review of 400 randomly selected patient run reports by an expert that purportedly revealed false statements and false claims that were submitted to the government, the complaint provides billing amounts and paid amounts as to only one claim (patient B.P.). In that instance, Liberty's employees apparently accurately reported B.P.'s condition (noting, for example, that the patient was alert and could walk (see Doc. 39 at ¶¶ 84, 85)), which would appear to be contrary to the government's theory that Liberty made false statements or omitted material information on the run reports about patients' conditions to secure reimbursements.[6]  Thus, it is not clear that the only claim for which billing and payment information is provided is part of the

---

[5]See United States ex rel. Atkins v. McInteer, 470 F.3d 1350, 1360, n.17 (11th Cir. 2006) (referencing government's access to claims as an advantage it has over a qui tam relator who may not).

[6]The government likewise alleges that the run report on patient M.P. reflected conditions that were presumably accurate too, so it is not clear how this claim is evidence of the scheme (and in any event, no billing or payment information is alleged as to this patient). See Doc. 39 at ¶¶ 89, 90.

allegedly unlawful scheme.[7]  Additionally, while the complaint alleges that Liberty billed Medicare $500 for B.P.'s transport, it further alleges that Liberty only received $168, so it is not clear whether the payment Liberty did receive was improper. See Doc. 39 at ¶ 86. While the government is not required to submit any actual claims, without such claims or supporting information from anyone "with first-hand knowledge" of Liberty's internal billing practices, it is not clear whether the government would be able to meet Rule 9(b)'s particularity requirements. See Mastej, 591 F. App'x at 704-05 ("It is not enough for the plaintiff-relator to state baldly that he was aware of the defendants' billing practices, . . . to base his knowledge on rumors, . . . or to offer only conjecture about the source of his knowledge.") (citations omitted); United States ex rel. Sanchez v. Lymphatx, Inc., 596 F.3d 1300, 1302-03 (11th Cir. 2010) (finding Rule 9(b) not met where former office manager who had personal knowledge of billing practices failed to plead specific details of allegedly fraudulent acts such as dates, patient names, and amounts of claims); Atkins, 470 F.3d at 1359 ("Atkins has described in detail what he believes is an elaborate scheme for defrauding the government by submitting false claims . . . cit[ing] particular patients, dates and corresponding medical records for services that he contends were not eligible for government reimbursement. Just like the Clausen plaintiff though, Atkins fails to provide the next link in the FCA liability chain, showing that the defendants actually submitted reimbursement claims for the services he describes."); Corsello v. Lincare, Inc., 428 F.3d

---

[7]If the government means to suggest that what Liberty employees "reportedly" did with patient B.P. is different from what they recorded on the run report, the government should clarify these allegations and should attach a copy of the run report that contained the allegedly false information (redacted to protect the patient's privacy).

1008, 1013 (11th Cir. 2005) (explaining that the submission of false claims cannot be inferred from a pattern of improper practices because it is the submission of the claims itself that must be pled with particularity); Clausen, 290 F.3d at 1312, 1315 (holding that while relator stated with particularity the circumstances of the alleged scheme, he failed to adequately plead presentment of any false claim where he did not identify any amounts charged or dates of claims paid, or attach a single bill or record of payment).

The allegations here are more similar to those in the cases cited above and are distinguishable from those in cases such as United States ex rel. Walker v. R&F Prop. of Lake County, Inc., 433 F.3d 1349 (11th Cir. 2005), where the Eleventh Circuit affirmed the denial of a motion to dismiss a False Claim Act claim notwithstanding the failure to attach any false claim. In Walker, the relator was a nurse practitioner who knew she was to have been assigned her own billing code but was instead "instructed each day 'which doctor she would be billing under'" and who discussed the matter with the office administrator who told her that the office "never" billed the government any other way. 433 F.3d at 1360. Here, by contrast, the statements of past and current employees do not demonstrate the same degree of familiarity with the billing process as would provide the indicia of reliability necessary to meet the Rule 9(b) standard. The Eleventh Circuit has explained that whether that standard is met is determined on a case-by-case basis. Atkins, 470 F.3d at 1358. In this case, the Court finds the current allegations are not enough.[8]

---

[8] In amending, the government shall also edit what is now paragraph 73 to clarify whether that paragraph and the following three are about patient S.L., or patient L.P., who is also referenced in paragraph 73.

In amending these claims, the government should also clarify how the time frames referenced throughout the complaint are relevant to the claims alleged.  For example, Pelletier is alleged to have worked for Liberty from 2006-2008 (Doc. 39 at ¶ 8) (meaning he left its employ seven years before the government filed its complaint in intervention), yet the government also alleges that Liberty has engaged in violations as far back as 2005 (Doc. 39 at ¶¶ 3, 42) (a year earlier than Pelletier's employment began), and continues to do so at present (Doc. 39 at ¶¶ 3, 42) (long after Pelletier and the other employees gave statements).  See Mastej, 591 F. App'x at 709-10 (limiting False Claims Act counts to time frames that were supported by relator's knowledge as opposed to his speculation that the practice of submitting false claims continued after he left).  Finally, as to Count Two, the "make or use" count, while the government cites the post-2009 amendment  (31 U.S.C. § 3279(a)(1)(B)) in the heading of Count Two, its allegations in paragraph 106 of this count track an earlier version of the statute.  See Doc. 39 at 21; see also Mastej, 591 F. App'x at 702, n.13 (describing 2009 amendment and earlier version).  Because the general allegations span a time frame both before and after 2009, the government should clarify the violations alleged in this claim.[9]

---

[9]In footnote 1 of its complaint (Doc. 39 at 7), the government states Liberty is liable for conduct under the prior and amended statutes, but mixing the citation of the current statute in the same count with the text of the earlier version is confusing.  (In looking to see if the prayer for relief provided more guidance on this point (it doesn't) the Court noted that the paragraphs of that section are misnumbered; they should be corrected when amending.)

### E.   Unjust Enrichment

Relying on the principle that 'a wrong' cannot support an unjust enrichment claim, Liberty argues that the government has not stated a claim of unjust enrichment because the claim is predicated on the same allegedly fraudulent conduct underlying the other claims. See Doc. 40 at 12 (citing State v. Tenet Healthcare Corp., 420 F. Supp. 2d 1288 (S.D. Fla. 2005), and other authorities).  The government does not dispute this argument but explains that it anticipates Liberty will argue there has been no wrong and that any error in charges results from the difficulty of following and complying with the Medicare billing rules.  Thus, the Court finds the unjust enrichment claim is essentially pled in the alternative and may remain (except that, as noted above, it must be repled because it improperly incorporates all preceding paragraphs).

### III.   Conclusion

Accordingly, it is hereby

**ORDERED**:

Liberty's Motion to Dismiss (Doc. 40) is **GRANTED** to the extent stated herein. The United States' Complaint in Intervention is **DISMISSED without prejudice** to filing an Amended Complaint in Intervention, which shall be filed no later than **February 1, 2016**.[10] Liberty shall respond to the Amended Complaint no later than **February 25, 2016**. In the meantime, the parties should continue to be governed by the deadlines in the Case

---

[10] The Court assumes that Pellitier's Amended Qui Tam Complaint (Doc. 25) was superseded by the government's Complaint in Intervention (Doc. 39) and therefore has become a nullity. If this is incorrect, the government should so advise by the same **February 1, 2016** deadline for filing its Amended Complaint in Intervention.

Management and Scheduling Order (Doc. 43).

**DONE AND ORDERED** at Jacksonville, Florida this 7th day of January, 2016.

_____
TIMOTHY J. CORRIGAN
United States District Judge

s.
Copies:

counsel of record