UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA
*ex rel.* Shawn Pelletier,

    Plaintiff,

v.                                          Case No.  3:11-cv-587-J-32MCR

Liberty Ambulance Service Inc.,

    Defendant.
_____/

## **UNITED STATES' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

In its Motion to Dismiss, Defendant Liberty Ambulance Service, Inc. ("Liberty") raises two types of arguments:  arguments the Court already rejected, and arguments that, if anything, require modest technical amendments to the operative complaint.  None of the Defendant's arguments negate the fundamental plausibility and particularity of the Amended Complaint.  The Court should again reject the arguments it dismissed the first time around.  Further, to the extent necessary, the Court should permit the United States to correct any deficiencies the Court identifies.

**LEGAL ARGUMENT**

    *1. The Complaint Satisfies the Pleading Requirements of Federal Rule of Civil Procedure 8(a)(2)*

In its motion, Defendant repeats many of the same arguments the Court previously rejected.  Regarding Rule 8(a)(2), Defendant argues that the allegations

in the Amended Complaint are not plausible since for some of these allegations it can come up with exculpatory explanations, such as Liberty was merely encouraging its employees to write detailed run reports.   These arguments are unavailing.

First, as the Defendant admits, "the Court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor."  Dkt. No. 55, Defendant's Motion to Dismiss United States' Amended Complaint in Intervention at 5 (Mar. 10, 2016) ("Motion") (citing *Mesocap Ind. Ltd. v. Torm Lines,* 194 F.3d 1342, 1343 (11th Cir. 1999) (further citations omitted).  Even if the Defendant can cast the allegations in the Amended Complaint in a different light, doing so is fundamentally counter to the legal standards governing the Defendant's Motion to Dismiss.

Moreover, as the Court has already concluded, the relevant allegations meet *Twombly* and *Iqbal*'s plausibility standard.[1]  The "short and plain" 159-paragraph Amended Complaint details—with specific documentation, statements from employees, statements from experts, and references to patient files—a long-running scheme in which Liberty knowingly and intentionally submitted false claims to the government.  For example, the complaint includes sworn testimony from four

---

[1] *Compare* Dkt. No. 47, Order Granting in Part and Denying in Part Defendant's Motion to Dismiss at 4 (Jan. 7, 2016) ("Order") ("the overall tenor of the allegations, sworn statements, and other exhibits supports the government's theory that Liberty knowingly and intentionally defrauded the government by submitting false claims for payment in violation of 31 U.S.C. §§ 3729(a)(1), 3729(a)(1)(A), and 3729(a)(1)(B). The Court finds the False Claims Act claims meet the Rule 8 pleading standards in that the allegations 'plausibly give rise to an entitlement to relief.'"), *with* Motion at 7 ("The overall tenor of the training manual and memo from Jimmy Barefoot attached as Exhibits H and I, simply demonstrates that the reports needed to be written in as much detail as possible so that Liberty could obtain reimbursement from Medicare for services it legitimately rendered to patients.").

witnesses that, for example, "nine times out of ten" Liberty Ambulance patients would lack the need to be transported by ambulance, Amended Complaint ¶ 51 ("AC"), or that the majority of patients transported could walk, talk, were coherent, and were alert and oriented. AC ¶ 54.

On top of that, the Government's complaint included specific examples from Liberty Ambulance's training documents and memoranda in which Liberty instructed its employees to falsify records. AC ¶¶ 64-76. Defendant instructed its employees to "[n]ever write ambulatory in your report," AC ¶ 59, "OMIT ALL POSITIVE FINDINGS," AC ¶ 74, and to concoct a legitimate-sounding reason for transport out of a patient's medical history, AC ¶ 75, all in order to claim reimbursement for a reimbursement-ineligible ambulance transport. Defendant also withheld its employees' paychecks until they modified their run reports to mask their ineligibility for government reimbursement. AC ¶¶ 55, 61.

In Defendant's vernacular, rather than a managing law firm partner reminding a junior associate of "the importance of filling out time records," Motion at 7, the allegations in the Amended Complaint fall far closer to a managing partner instructing the associate to modify time entries for payment-ineligible work so it appears to be eligible, then refusing to pay the associate unless the associate complies. The managing partner's actions constitute fraud backed by coercion, and if the client were the U.S. Government, would violate the False Claims Act.

The Amended Complaint also includes twenty-six claims which an expert witness identified as false claims, and provides billing and claim details for these

patients.  AC ¶ 121.  Specific details for four of these patients are documented in the Amended Complaint.  AC ¶¶ 78-114.

As the Court has previously concluded, the Amended Complaint amply meets the plausibility standard.[2]  Thus, with respect to Rule 8(a)(2), Defendant's motion should be denied.

> 2. *The Complaint Satisfies the Particularity Pleading Requirements of Federal Rule of Civil Procedure 9(b)*

The core of the Defendant's 9(b) arguments is its claim that the various counts improperly incorporate specific paragraphs in the Amended Complaint.  *See* Motion at 11-12 (Count II); *id.* at 12-13 (Count V); *id.* at 15-17 (Counts III & IV).  Even if the Court agrees with Defendant's argument, which it should not, these alleged technical deficiencies are easily remedied through amendment.  As to Count I, the Defendant quibbles with three of the four run reports attached to the Amended Complaint, arguing that they do not necessarily demonstrate fraud.  Defendant does not address one of the four run reports, and also does not address the twenty-two other transports that the government's expert has concluded were not medically necessary and thus should not have been submitted to Medicare for

---

[2] Defendant also makes a half-hearted attempt to extend its *Twombly* argument to Claim V and repeats its argument that Count V is invalid because the Amended Complaint references an HHS Advisory Opinion.  Again, the Court has already addressed and rejected this argument. *See* Order at 5 ("[C]onstruing the facts in the light most favorable to the plaintiff, the Court finds here too that the allegations are sufficient to meet the Rule 8 standards. In making this determination, the Court finds the allegations state a claim of a violation of the plain language of the Anti-Kickback Statute and the Court therefore does not address the effect, if any, of the Health and Human Services Advisory Opinion 99-13 relied on by the government in its complaint.") (internal citations omitted).

reimbursement.[3]  Taken together, Defendant's arguments do not raise anything more than, at most, a need for technical amendments to the Amended Complaint.

Defendant argues that Count II does not satisfy Rule 9(b) because it does not specifically incorporate or adopt the paragraphs that list specific false claims.  *See* Motion at 12 n.3 ("It should be noted that while the Amended Complaint attempts to list specific claims in paragraphs 79-113, those paragraphs are not incorporated into Count II.  Without those, Count II fails to meet Rule 9's particularity requirement.").  Paragraphs 79-113 and 121 offer specific allegations "that the government in fact paid a false claim," *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1329 (11th Cir. 2009), but Defendant claims that Count II must be dismissed because these paragraphs were not specifically listed within Count II. Defendant does not allege that it does not understand the basis for Count II, or that it cannot adequately prepare for trial without the allegedly required amendments.  In other words, the Defendant has not raised any flaw, in Count II or throughout the Amended Complaint, which cannot be easily remedied through amendment.  As such, if the Court is inclined to grant the motion to dismiss, it should allow the United States an opportunity to correct any identified deficiencies.

---

[3] For each of the twenty-six identified claims, the Amended Complaint includes the patient's initials, the date of transport, the date the claim was submitted, the amount sought in reimbursement, and the amount actually reimbursed.  AC ¶ 121.  Importantly, that the amount actually reimbursed is less than the amount sought in reimbursement is of no consequence, since reimbursement rates are set by the National Fee Schedule.  AC ¶¶ 32-34; *see* AC ¶ 34 ("[T]he fact that a provider receives less than it bills the government is neither unusual nor suggestive of any fact other than the National Fee Schedule proscribes set reimbursement amounts.").

The story is similar with Count V, where the Defendant laments the lack of an identified false claim associated with the kickback scheme. *See* Motion at 12 ("Plaintiff fails to identify one single patient Liberty purportedly received through this kickback scheme."). Count V differs from Counts I and II, however, in that the falsity of the claim is not tied to the details of the claim itself, such as the billing amount or the medical necessity of the transport. Rather, the claim falsity in Count V consists of "submitting interim claims to the government *for referred* Medicare patients after having engaged in an incentive-for-referral scheme and then falsely certifying at year-end that they have complied with the applicable healthcare laws." *U.S. ex rel. Mastej v. Health Mgmt. Associates, Inc.*, 591 F. App'x 693, 708-09 (11th Cir. 2014), *cert. denied,* 135 S. Ct. 2379, 192 L. Ed. 2d 165 (2015).

*Mastej* and other Eleventh Circuit precedent demonstrate that Count V is adequate in its present form. The indicia of reliability needed to satisfy Rule 9(b) are determined on a case-by-case basis, *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1358 (11th Cir. 2006), and "there is no per se rule that an FCA complaint must provide exact billing data or attach a representative sample claim." *Mastej*, 591 F. App'x at 704 (citing *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1312 & n.21 (11th Cir. 2002). For claims like Counts I and II, "representative claims with particularized medical and billing content matter more, because the falsity of the claim depends largely on the details contained within the claim form." *Mastej*, 591 F. App'x at 708-09. In this case, as in *Mastej*, any patient that was referred through the illegal kickback scheme resulted in a false claim for reimbursement, and "the

6

type of medical service rendered and described in that interim claim, the billing code, or what was charged for that service are not the underlying fraudulent acts." *Id.* at 709.

Instead, the underlying fraudulent acts are described in detail in the Amended Complaint: Liberty has a policy of offering money-losing, commercially-unreasonable rates to private payors in exchange for those payors referring their government-paid patients to Defendant. As an example of this illegal and fraudulent referral scheme, the Amended Complaint details Defendant's arrangement with Memorial Hospital. Exhibit O is the Liberty/Memorial fee schedule, Exhibit P is a letter from another ambulance provider—Century Ambulance—to the Chief Financial Officer of Memorial Hospital warning the CFO that its deal with Liberty likely violated the Anti-Kickback Statute, Exhibit Q is an affidavit from Marsha Morrell of Century Ambulance establishing that the rates Liberty offered Memorial were well below Century's own costs for providing that service, and Exhibit R is a Liberty email establishing that Liberty was losing money on its provider contract with Memorial Hospital. Because of the illegal referral scheme, every claim submitted after the referral scheme was implemented was a false claim. *McNutt ex rel. U.S. v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1259 (11th Cir. 2005). For transports initiated pursuant to the Liberty/Memorial agreement, every claim that originated from a Memorial referral submitted after the 2009 effective date of the agreement was fraudulent.

7

Even if the Court were to require that a specific false claim be included within Count V, this information could easily be added to this Count. In fact, in paragraph 121 of the Amended Complaint, in the table of false claims identified by the Government's expert, patient G.R., transported on January 13, 2012, was transported from Memorial Hospital by Liberty Ambulance. Although the patient's initials, date of transport, date of claim submission, amount sought in reimbursement, and amount received in reimbursement are already in paragraph 121, any additional information that the Court deems necessary could be added. Thus, the Court should allow any amendment it deems necessary.

As to Count I, even though this Count incorporates twenty-six claims for which an expert witness examined the patients' files and determined that the transports were not medically necessary, *see* AC ¶ 121, Liberty claims that its analysis reveals that three of the twenty-six claims may not necessarily be fraudulent. *See* Motion at 13-15 (analyzing the run reports for patients G.F., L.N., and M.W.). Liberty thus claims that Count I is not pled with particularity.

Liberty's quibbling with the allegations of the complaint runs afoul of its own admission that on a motion to dismiss, "the Court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor." Motion at 5 (citing *Mesocap*, 194 F.3d at 1343 (further citations omitted). Moreover, "[w]hen Rule 9(b) applies to a complaint, a plaintiff is not expected to actually *prove* his allegations" at the motion to dismiss stage, and the Court is required to "defer to the properly pleaded

allegations of the complaint." *Clausen*, 290 F.3d at 1313. That Liberty can construct a scenario in which some of the transports were reimbursement-eligible does not detract from the well-pleaded allegations that false claims were actually presented to the government for reimbursement.[4]

Even if Liberty is correct that three of the twenty-six patient transports identified by an expert witness as not medically necessary may in fact be legitimate claims, and that this analysis is appropriate at the motion to dismiss stage, twenty-three of the pleaded false claims stand unrebutted, any of which can serve as the requisite single false claim for purposes of Rule 9(b). *See Clausen*, 290 F.3d at 1311 ("some indicia of reliability must be given in the complaint to support the allegation of *an actual false claim* for payment being made to the Government.").

For the unjust enrichment and mistake claims, assuming Rule 9(b) applies to the unjust enrichment and mistake claims, these claims satisfy Rule 9(b) for the same reasons as the FCA counts. *See, e.g.*, *United States v. Gericare Med. Supply Inc.*, No. CIV.A.99-0366-CB-L, 2000 WL 33156443, at *10 (S.D. Ala. Dec. 11, 2000)

---

[4] Liberty also argues that "there [was] simply no fraud committed" because some of the buzz words Liberty employees were taught to omit appear in the run reports attached to the Amended Complaint. Motion at 13-14. The Amended Complaint already addresses this argument, and shows why it is misplaced: "While Liberty Ambulance directed its employees to omit relevant information so as to justify reimbursement to the federal healthcare programs and while most run reports do indeed follow this directive, employees occasionally failed to follow these directives." AC ¶ 77. Despite Liberty directives to edit, obfuscate, and falsify run reports to falsely maximize reimbursement, some run reports contain the avoided language in the report, and the claim was paid anyway. *See* AC ¶ 121. This is because ordinarily the Medicare program, for example, does not receive or examine the run reports, but relies on Liberty's certification that the transport met reimbursement requirements. *See, e.g.*, AC ¶¶ 80, 87-89. Rather than an indication that the United States is seeking to "have it both ways," Motion at 13, that the run reports are sometimes inconsistent with the directions to misrepresent them means simply that the Defendant did not execute its fraud scheme perfectly, or its employees did not always comply with directions to falsify run reports, at least until Liberty withheld their pay until the run reports were altered. *See* AC ¶¶ 55, 61.

9

(concluding that the unjust enrichment and mistake claims satisfied Rule 9(b) for the same reasons the substantive FCA claims satisfied Rule 9(b), or would satisfy 9(b) with an amended complaint).

If there is some needed clarification as to which factual allegations support the unjust enrichment and mistake claims, the United States is willing to make these technical changes.

Defendant also repeats its argument that the unjust enrichment claim should be dismissed because it is based on a wrong. The Court has already rejected this exact argument, and should do so again. *See* Order at 11 ("Relying on the principle that 'a wrong' cannot support an unjust enrichment claim, Liberty argues that the government has not stated a claim of unjust enrichment because the claim is predicated on the same allegedly fraudulent conduct underlying the other claims. . . . [T]he Court finds the unjust enrichment claim is essentially pled in the alternative and may remain.").

Defendant's final argument is that the Court should not grant the United States "a blank ticket to conduct discovery" because then the United States will "request production of every . . . claim submitted by the Defendant," which could then lead to an "unlimited fishing expedition" so that it can state a claim. Motion at 18. The Defendant's unsupported assertion is overblown.

First, as explained above, the Amended Complaint already states a claim under Rules 8(a) and 9(b), or through easy and straightforward edits can do so. Second, the discovery process in the Defendant's parade of horribles does not come

close to matching the facts of this case since, for example, the United States already has "every claim submitted by the Defendant," has already provided these claims to the Defendant in its initial disclosures, and has offered the same data to the Court should the Court request. *See* AC at ¶ 4, n.2. Thus, the Defendant's alleged "unlimited fishing expedition" has already been accomplished through the United States' years-long investigation into Liberty's conduct, an investigation that has already led to multi-million +dollar settlements from the Defendant's potential co-defendants. For the same reasons, the United States does not seek to proceed with its case as "a pretext for discovery of unknown wrongs," because the wrongs are already thoroughly alleged in the Amended Complaint. The Court should reject Defendant's misplaced and overblown rhetoric.

## CONCLUSION

Plaintiff, the United States, respectfully requests that the Court deny the motion to dismiss. In the alternative, the United States requests that the Court grant leave to amend any deficiencies in the Amended Complaint.

Respectfully submitted,

A. LEE BENTLEY
United States Attorney

*/s/ Shea M. Gibbons*
JASON P. MEHTA
SHEA M. GIBBONS
Assistant United States Attorneys
FL Bar No. 0106110
USA Bar No. 0000172
300 North Hogan Street, Suite 700
Jacksonville, Florida 32202

Telephone: (904) 301-6300
Facsimile: (904) 301-6310
Jason.Mehta@usdoj.gov
Shea.Gibbons@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2016, I caused a true and accurate copy of the foregoing to be filed using the Court's CM/ECF system, which will send an electronic notice of filing to all counsel of record.

*/s/ Shea M. Gibbons*
SHEA M. GIBBONS
Assistant United States Attorney